1

2

3

4

5

6

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

7

8  LIVABLE LAKE STEVENS,

9                    Plaintiff,

10                    v.                                Case No. _____

11  UNITED STATES ARMY CORPS OF        COMPLAINT
    ENGINEERS, ALEXANDER L.
12  BULLOCK, SEATTLE DISTRICT          (Environmental and Administrative
    COMMANDER,                          Procedure Act Claims)
13

14                    Defendants,

15

16      Plaintiff Livable Lake Stevens ("LLS"), by and through its undersigned counsel,

17  files this Complaint for declaratory and injunctive relief, stating as follows:

18                          **INTRODUCTION**

19                                  1.

20

21      This action concerns violations of Section 404 of the Federal Water Pollution

22  Control Act ("Clean Water Act" or "CWA"), as well as the National Environmental

23  Policy Act of 1969 ("NEPA"). Those violations occurred when defendants Bullock and

24  the United States Army Corps of Engineers' ("the Corps'") issued - on April 20, 2021 -

25  a Memorandum for Record including an Environmental Assessment ("EA") and a

26  Finding Of No Significant Impact ("FONSI") that allowed issuance of Permit

**PAGE - 1 - COMPLAINT**
Case No. _____

1  #11090851 for the discharge of dredged or fill material into waters of the United

2  States. That Permit authorized the filling of wetlands to allow construction of a Costco

3  store, fueling depot, and associated road and infrastructure located at 2404 South

4  Lake Stevens Road in Lake Stevens, Snohomish County, Washington. That Permit

5  authorized 1.72 acres of wetland to be directly filled, and another 1.39 acres to be

6  effectively damaged and no longer fully functional as wetland due to lack of buffer

7  space and altered hydrology.

8

9                                            2.

10        Section 404 of the CWA requires that only those projects that represent the

11  least damaging practicable alternative that will satisfy a project's purpose and need

12  may be permitted. In determining the least damaging practicable alternative, the

13  Corps must evaluate a number of environmental and economic factors pursuant to

14  CWA regulations, must look at the entire project, and must consider the project in

15  context with the cumulative effects from past wetland fills and likely future fills in the

16  same Region.

17

18                                            3.

19        The 404 Permit approved for this project is inappropriate and illegal for several

20  reasons. The site was a highly productive forested wetland, and there are other sites

21  nearby (some even on the same highway) that are practicable and less damaging to

22  the environment. The evaluation of the site, its wildlife, and its wetlands was not

23  credible, and falls short of what NEPA requires. Cumulative effects were not

24  adequately analyzed, the geographical area of the cumulative effect analysis was

25  inappropriate, and there was no consideration of the impacts of additional wetland fills

26

LAW OFFICE OF KARL G. ANUTA, P.C.
TRIAL ATTORNEY
735 S. W. First Avenue
Portland, Oregon  97204
Phone 503.827.0320 -Fax 503.386.2168

1    that are occurring, or will occur in the near future.

2                                    4.

3    The defendant's Public Interest analysis was also deficient, with both the

4    evaluation of the site and the purported benefits to the public considered superficially,

5    or not at all. The Corps failed to give weight to credible evidence it received from the

6    public, and did not independently verify or corroborate evidence given it by the

7    

8    applicant.

9                                    5.

10   Alternative sites for the project were not adequately evaluated by the applicant,

11   and the Corps failed to perform due diligence to confirm or refute the claims of the

12   applicant about those other sites.

13                                    6.

14   

15   The EA and FONSI done for the Permit was not founded on adequate

16   evidence, and do not reflect an independent evaluation by the Corps.

17                                    7.

18   The issuance of the Section 404 permit by the Corps, and the inadequate EA

19   and FONSI, are final agency actions that are arbitrary, capricious, and otherwise not

20   in accordance with law, and therefore are in violation of the Administrative Procedure

21   Act, 5 U.S.C. § 706 et. seq. ("APA"). Livable Lake Stevens requests that this court

22   grant injunctive and declaratory relief to compel the Corps to comply with its

23   

24   obligations under CWA and NEPA.

25   / / / /

26   / / / /

**PAGE - 3 - COMPLAINT**
Case No. _____

1

**JURISDICTION AND VENUE**

2

8.

3

4

This action arises under the CWA, 33 U.S.C. § 1344, and NEPA, 42 U.S.C. §§

4321-4347. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and may issue

5

declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiff is

6

7

entitled to bring this action pursuant to the APA, 5 U.S.C. §§ 701-06.

8

9.

9

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

10

**PARTIES AND STANDING**

11

**(Plaintiff)**

12

10.

13

14

Plaintiff Livable Lake Stevens ("LLS") a local coalition of individuals,

15

businesses and others who are concerned about the potential effects of a Costco

16

Warehouse on the proposed site. LLS has members who live, work and recreate on

17

and near the wetland fill site in the city of Lake Stevens. Their activities and quality of

18

life will be negatively impacted by the wetland fill and/or the construction of the

19

proposed Costco.

20

21

11.

22

LLS and its members have an interest in permitting agencies carrying out

23

credible, verifiable studies and analyses to minimize harm to the environment. This

24

interest is harmed by the flawed permitting and analysis by the Corps that led to the

25

issuance of Permit #11090851.

26

/ / / /

**PAGE - 4 - COMPLAINT**
Case No. _____

1

12.

2

3       LLS and its members have commented to and corresponded with the Corps

4  several times during the Corps' evaluation of this permit, as well as doing the same

5  with the City of Lake Stevens and Snohomish County. LLS seeks to ensure that all

6  applicable laws are followed in the decisions on this proposed project, and advocates

7  for planning and policies that will have the least impact on environmental resources.

8  These interests have been directly harmed by the violations of NEPA and the CWA by

9  the defendants as described herein.

10                              **(Defendants)**

11                                   13.

12

13      The Corps is a Department of the U.S. Army. The Corps has responsibility for

14  administering the CWA Section 404 program. The Corps issued the Section 404

15  permit and the EA that accompanied it.

16                                   14.

17      Colonel Alexander J. Bullock is the District Commander of the Corps' Seattle

18  District, which has jurisdiction over the area in which the proposed project is located.

19  Colonel Bullock was Commander on April 20, 2021 when Permit #11090851 was

20  issued. Colonel Bullock is sued in his official capacity only.

21

22                          **LEGAL FRAMEWORK**

23                          **(CWA Section 404)**

24                                   15.

25      CWA Section 404, found at 33 U.S.C. § 1344, prohibits the discharge of

26  dredged or fill material into waters of the United States without a permit. The Corps is

**PAGE - 5 - COMPLAINT**
Case No. _____

1  the agency that implements the Section 404 program, under the oversight of the U.S.

2  Environmental Protection Agency ("EPA").

3                                  16.

4
5          EPA established regulations pursuant to CWA Section 404 that govern Corps

6  permitting decisions. These are known as the 404(b)(1) guidelines and found at 40

7  C.F.R. Part 230. One provision of these Rules, 40 C.F.R. § 230.10(a), prohibits

8  issuance of a permit if there is a practicable alternative which would have less impact

9  on the aquatic ecosystem.

10                                 17.

11
12         Practicable alternatives are those which are available and can be

13  accomplished after taking into account costs, technology, and logistics in light of

14  overall project purposes. Alternative sites and ways of accomplishing the project with

15  less or no impact on special aquatic sites are presumed to be available, unless the

16  applicant clearly demonstrates otherwise.

17                                 18.

18
19         Pursuant to its own regulations, found at 33 C.F.R. § 320.4, the Corps must

20  also complete a public interest review when evaluating Section 404 permit

21  applications. As part of that review, the Corps must evaluate "the probable impacts,

22  including cumulative impacts, of a proposed activity and its intended use on the public

23  interest." That is required by 33 C.F.R. § 320.4(a)(1). The factors considered in a

24  public interest review include both environmental and economic impacts. The Corps

25  must start with and apply the presumption that the destruction of wetlands is contrary

26  to the public interest, as that is the mandate of 33 U.S.C. § 320.4(b)(1).

**PAGE - 6 - COMPLAINT**
Case No. _____

**(NEPA)**

19.

Pursuant to 42 U.S.C. § 4332(2)(C) NEPA requires agencies to prepare an Environmental Impact Statement ("EIS") before undertaking a major federal action that will significantly affect the quality of the human environment. The issuance of a Section 404 CWA wetland fill permit is potentially such a federal action, and triggers NEPA.

20.

The "human environment" that is potentially affected is defined in current Council on Environmental Quality ("CEQ") regulations found at 40 C.F.R. § 1508.1(m) to be "…comprehensively the natural and physical environment and the relationship of present and future generations of Americans with that environment."[1]   The wetlands at issue in this case, and the fish and wildlife that rely on them, case are part of that same human environment.

21.

The preparation of an EIS serves three primary functions. First, it ensures that an agency takes a hard look at the direct, indirect and cumulative environmental impacts of a proposed project before proceeding. Second, it guarantees that the agency considers a range of reasonable alternatives to accomplish the underlying

_____

[1] The CEQ revised the Regulations implementing NEPA in July 2020, during the Trump Administration. There were significant changes made to the Regulations at that time. Those revisions have been challenged in a number of lawsuits. There is a distinct possibility that the current version of the Regulations will be overturned. The Biden Administration has also already published notice of its intent to amend the Regulations, to return to the prior version of the CEQ Regulations - on the grounds that the prior Regulations more accurately state the law that agencies must apply when implementing NEPA.

**PAGE - 7 - COMPLAINT**
Case No. _____

goals of the proposed project and considers options that may have fewer adverse impacts on the environment before deciding whether to undertake the project in the form proposed. Finally, the EIS provides the public and other agencies with detailed information about a proposed project, its impacts, and reasonable alternatives, so that they may participate meaningfully in the decision-making process.

22.

In the NEPA process, first, an agency conducts an Environmental Assessment ("EA") to decide if there are significant environmental impacts. If such impacts are found, an EIS is undertaken. If, after conducting the EA, the agency decides that the impacts do not rise to the level of significance, a Finding of no Significant Impact ("FONSI") is published giving the reasons for the agency conclusion. Under Corps regulations, specifically 33 CFR § 230.10(a) & (b) the District Commander is responsible for making the determination and informing the public of the availability of the EA and the FONSI.

23.

The basic purpose of NEPA is to ensure that Federal agencies conduct environmental reviews in a coordinated, consistent, predictable and timely manner. NEPA, specifically 42 U.S.C. § 4332(2)(C) & (E), requires that every EIS must discuss, among other things, the adverse environmental effects of the proposed action and the alternatives to the proposed action which may avoid or minimize these adverse effects.

24.

The "effects" that must be discussed in an EIS include, among other

**PAGE - 8 - COMPLAINT**
Case No. _____

LAW OFFICE OF KARL G. ANUTA, P.C.
TRIAL ATTORNEY
735 S. W. First Avenue
Portland, Oregon  97204
Phone 503.827.0320 -Fax 503.386.2168

considerations, the direct environmental impacts of the proposed action, the indirect effects of the proposed action, and the cumulative impacts of the proposed action. Direct impacts are those caused by the action and occurring at the same time and place.

25.

Indirect effects are those effects which are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable. Indirect effects may include "growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems.

26.

A cumulative impact is an impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time.

**(The APA)**

27.

The APA, provides anyone aggrieved or adversely affected by agency action the right to judicial review.

28.

The APA further provides that a reviewing court "shall" hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an

**PAGE - 9 - COMPLAINT**
Case No. _____

LAW OFFICE OF KARL G. ANUTA, P.C.
TRIAL ATTORNEY
735 S. W. First Avenue
Portland, Oregon  97204
Phone 503.827.0320 -Fax 503.386.2168

1  abuse of discretion, or otherwise not in accordance with law" including findings that

2  are not supported by substantial evidence.

3                                            29.

4      The Corps' issuance of the challenged CWA Section 404 Permit, along with its

5

6  EA and FONSI, are subject to judicial review under the APA.

7                                **FACTUAL BACKGROUND**

8                                            30.

9      The application for the challenged Permit was received by the Corps in

10 February 2019. The application requested permission to fill several wetland areas on

11

12 properties presently owned by the City of Lake Stevens, and a private owner.

13                                           31.

14     Public Notice of the application was given by the Corps and a public comment

15 period was announced in March 2020. LLS submitted comments on the application in

16 April 2020.

17                                           32.

18     LLS' comments noted the lack of detail in the applicant's description of the

19 flora, fauna, and ecological functions of the project site, and the absence of any draft

20 environmental impact analysis. LLS pointed out that other than determinations on

21 listed species, the material submitted lacked evidence of a good-faith effort to

22

23 document the impacts of the development on the many species of plants, fish and

24 wildlife that presently occupy the site. Without such baseline data, the environmental

25 impacts of the project cannot be reliably quantified.

26 / / / /

**PAGE - 10 - COMPLAINT**
Case No. _____

33.

LLS' comments also pointed out the lack of evidence of public benefits that would allegedly accrue from the project, in an area that already boasts several Costco stores, and the absence of any accounting for the loss of benefits now provided by the forested wetland site and its abundant wildlife. In addition, LLS pointed out the superficial and misleading nature of the alternatives analysis of other potential store sites, and the practicable suitability of siting such a store at other sites that would have less impact on high-functioning wetlands than the proposed site.

34.

LLS also noted the nearly 200 wetland fill permits issued by the Corps in Snohomish County since 2004, the other wetland fills already slated for the near future, and the lack of any cumulative effects analysis that accounted for the impacts of those fills and the cumulative effects of the proposed fill under this Permit when viewed in conjunction with past, present and reasonably foreseeable future wetland fills.

35.

In October 2020 LLS submitted a supplemental comment to the Corps, describing additional and continuing inconsistencies or issues with the applicant's alternatives analysis. The supplemental comment also requested that the Corps do independent evaluation and verification of the environmental impacts on the site for NEPA compliance, since the site still had not been documented for its wildlife hydrologic functions, and other ecological values by the applicant.

/ / / /

**PAGE - 11 - COMPLAINT**
Case No. _____

LAW OFFICE OF KARL G. ANUTA, P.C.
TRIAL ATTORNEY
735 S. W. First Avenue
Portland, Oregon 97204
Phone 503.827.0320 -Fax 503.386.2168

1

2        36.

3        In November 2020 LLS submitted yet another supplemental comment on the

4   additional cumulative impact from a Washington State Department of Transportation

5   wetland fill applications for adjacent wetlands. LLS pointed that to date those impacts

6   have not been evaluated or considered by either the applicant or the Corps, and that

7   to do an adequate cumulative impact analysis such an analysis would be necessary.

8        37.

9        Although the applicant did submit additional information to the Corps on

10  various aspects of the application, the legal and factual issues raised by LLS in its

11  comments have not been resolved.

12              **FIRST CLAIM FOR RELIEF**

13

14              **(Violations of CWA**
                **Due to Deficient Public Interest Review,**
15        **Inadequate Cumulative Impacts Analysis, and**
                **Inadequate Alternatives Analysis)**

16

17        38.

18       The above paragraphs, #1 - 37, are incorporated herein by reference.

19        39.

20       The Corps violated CWA Section 404 in several ways. Defendants improperly

21  relied on incomplete and unverified data and statements by the applicant in claims of

22  benefits to the public, and failed to quantify and analyze benefits to the public from the

23  site as it is presently.

24        40.

25       Cumulative effects were not quantified or considered adequately. The

26

**PAGE - 12 - COMPLAINT**
Case No. _____

LAW OFFICE OF KARL G. ANUTA, P.C.
TRIAL ATTORNEY
735 S. W. First Avenue
Portland, Oregon  97204
Phone 503.827.0320 -Fax 503.386.2168

geographical scope was improperly narrow, no accounting of the cumulative impacts of past or reasonably foreseeable future wetland impacts was made, and the findings on cumulative impacts were not based on evidence and a reasoned process, but were merely conclusory.

41.

Practicable alternatives to the preferred site were improperly rejected based on unsupported assumptions, unverified information, and incomplete analysis. The conclusion that the preferred alternative is the least environmentally damaging practicable alternative is inaccurate and arbitrary and capricious.

42.

Defendants' inadequate process in carrying out CWA Section 404, and defendant's issuance of this permit were arbitrary, capricious and otherwise not in accordance with the law, and as such violate the APA.

43.

Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, plaintiff should be awarded its costs, expenses, expert witness fees, and reasonable attorney fees associated with this litigation.

**SECOND CLAIM FOR RELIEF**

**(The Corps' EA and FONSI Violate NEPA)**

44.

Paragraphs 1 - 37 and 43 are realleged.

45.

NEPA requires a hard look at the project's direct, indirect and cumulative

**PAGE - 13 - COMPLAINT**
Case No. _____

effects.

46.

The Corps' EA and FONSI are not supported by substantial (or any) evidence that demonstrates the thorough and proper examination of direct, indirect, and cumulative effects of the project that the law requires.

47.

The Corps failure to independently verify the studies and impacts to the human environment, means that the findings in its EA and FONSI are based on an incomplete and inadequate analysis.

48.

Defendants' EA and FONSI are arbitrary, capricious, and otherwise not in accordance with the law.

49.

Defendants' inadequate process in carrying out NEPA and defendant's issuance of this permit with only an EA/FONSI were arbitrary, capricious and otherwise not in accordance with the law, and as such violate the APA.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this court:

1.  Enter a Declaratory Judgment that defendants have violated the National Environmental Policy Act by preparing a deficient Environmental Assessment and Finding of No Significant Impact for this proposed project.

2.  Enter a Declaratory Judgment that defendants have violated the Clean Water Act Section 404 by issuing a permit to the proposed project.

**PAGE - 14 - COMPLAINT**
Case No. _____

1    3.  Enter a Declaratory Judgment that defendants have violated the

2  Administrative Procedure Act by issuing a permit to the proposed project using a

3  process that did not comply with either NEPA or the CWA or both.

4    4.  Vacate the permit issued April 20, 2021, authorizing fill of wetlands at this

5  site.

6

7    5.  Enter injunctive relief to ensure that defendants in the future comply with

8  the Clean Water Act and/or the National Environmental Policy Act, when issuing

9  similar permits.

10    6.  Award Plaintiff the costs and reasonable attorney fees.

11    7.  Grant such other relief as the court deems equitable and proper.

12    Dated this _____ day of October, 2021.

13

14                                                By: _____

                                               Karl G. Anuta, WSBA No. 21346
15                                               kga@integra.net

16

17

18

19

20

21

22

23

24

25

26

**PAGE - 15 - COMPLAINT**
Case No. _____