HONORABLE RICHARD A. JONES

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| LIVABLE LAKE STEVENS, | CASE NO.  2:21-cv-01423-RAJ |
| Plaintiff, | **ORDER GRANTING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.,* | |
| Defendants, and, | |
| COSTCO WHOLESALE CORPORATION, | |
| Intervenor-Defendant. | |

## I.    INTRODUCTION

THIS MATTER comes before the Court on a Motion for Summary Judgment filed by Livable Lake Stevens ("Plaintiff" or "LLS"), Dkt. # 35, Cross-Motion for Summary Judgment filed by United State Army Corps of Engineers (the "Corps") and Seattle District Commander, Alexander L. Bullock (collectively, "Federal Defendants"), Dkt. # 37, and Cross-Motion for Summary Judgment filed by Intervenor-Defendant Costco Wholesale Corporation ("Costco"), Dkt. # 38.   The Court has reviewed the motions, all

ORDER - 1

submissions filed in support of and opposition to the motions, the balance of the record, and the applicable law. Plaintiff and Costco requested oral argument, but the Court finds this unnecessary. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Summary Judgment, Dkt. # 35, and **GRANTS** Defendants' Cross-Motions for Summary Judgment. Dkts. # 37, 38.

## II.   BACKGROUND

This litigation arises out of a dispute over the Corps' issuance of a Clean Water Act Section 404 permit ("Section 404 permit") to Costco for a project in Lake Stevens, Washington. The relevant factual history is described below.

Starting in April 2019, Costco and the City of Lake Stevens ("Lake Stevens") collaborated to create a suitable site plan for a Costco warehouse in Lake Stevens. *See generally* AR1636-71, Order Adopting Binding Site Plan, (Apr. 16, 2020) ("City Site Plan"). The City Site Plan required Costco complete three separate mitigation measures. *Id*. at AR1652. The Plan required Costco to purchase 3.044 credits from the Snohomish Mitigation bank, which is the Washington Department of Ecology and the Corps' preferred mitigation action. *See id.*; *see also* 33 C.F.R. 332.3(b)(2). The City Site Plan also required Costco to improve fish-blocking culverts in a tributary to Mosher creek and provide enhancement plantings. *See* AR1652. Lastly, the City Site Plan required Costco to create 0.45 acres of wetland/fish habitat along Wetland D, a measure that addressed the Tulalip Tribe's interest in Costco taking measures to enhance fish habitat near the project site. *See id.*; *see also* AR2477. Once Costco secured Lake Stevens' approval, the retailer applied for a Section 404 permit, proposing to fill 1.72 acres of wetlands in Lake Stevens in order to construct the warehouse, parking, and stormwater infrastructure.

When reviewing the Section 404 application, the Corps conducted analyses to ensure compliance with the Clean Water Act ("CWA") and the National Environmental

ORDER - 2

Policy Act ("NEPA").  The Corps conducted a public interest review, analyzing the wetlands, fish and wildlife vales, water quality, and climate change effects that could impact the environment.  *See* AR0018-22.  The Corps evaluated nine alternatives to the proposed project, including a no-action alternative, five off-site, and three on-site alternatives.  *See* AR0009-12.  The Corps explained that six of the nine alternatives were not selected for more detailed analyses because they did not meet the purposes of the project.  *See id*.  In addition, the Corps provided a more detailed analysis of potential impacts associated with the three remaining sites.  *See id*.

In March 2020, the Corps gave public notice that Costco applied for a Section 404 permit, and invited public comment while the Corps reviewed the application.  *See* AR0899.  LLS participated in the process and raised concerns about the environmental impacts of the Costco project.  *See e.g*., AR1236-79; AR1222-35; AR2307-66.   In November 2021, prompted by comments made by LLS, the Corps reached out to Costco to request a more accurate representation of Alternative Site # 2, one of the five off-site proposed alternative building sites.  AR2308-09.  The Corps worked with Costco's team to assess concerns raised by LLS in the comment.  *See* AR2449; *see also* AR2452-62.  The Corps evaluated a detailed report, prepared by Costco's consultant, that addressed Plaintiff's comments and evaluated the scientific information available.  *See* Dkt. # 37 at 28-29 (citing AR0008-12).  Ultimately, the Corps determined that Plaintiff's assertions were based on stale data and decided to rely on data provided by Costco's consultant in preparing the Environmental Assessment.  *See id*.

On April 21, 2021, the Corps finalized its analysis and published its Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") (collectively, "EA/FONSI").  AR001-31.  On April 29, 2021, the Corps issued Costco a Section 404 permit authorizing the retailer to fill 1.72 acres of wetlands.  AR0032-36.  In

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

July 2021, after conducting initial site preparation, Costco started construction on the warehouse. *See* Dkt. # 38 at 4 (citing Dkt. # 38-1, Decl. of Steve Bullock ¶ 6). Costco completed mitigation efforts and construction of the warehouse as of November 2022. *See id*. at 5 (citing Dkt. # 38-1 Decl. of Steve Bullock ¶¶ 10-11).

In October 2021, four months after construction began on the site, LLS filed a lawsuit against the Federal Defendants for alleged violations of the NEPA, 42 U.S.C. §§ 4321-47, and the CWA, 33 U.S.C. §§ 1251-1387, for issuing the Section 404 permit to Costco. *See* Dkts. # 1, 19. Plaintiff challenges the sufficiency of the Corps' EA/FONSI, and the Corps' decision not to prepare an Environmental Impact Statement ("EIS"). Plaintiff requested that the Court: 1) enter Declaratory Judgment that Defendants violated NEPA, CWA, and APA; 2) vacate the wetland fill permit issued; and 3) provide injunctive relief to ensure that Federal Defendants comply with the CWA and NEPA when issuing similar permits. *See* Dkt. # 19 at 15-16. Although not initially a party to this litigation, the Court admitted Costco into this litigation as an intervenor-defendant. Dkt. # 11.

## III.    DISCUSSION

### A.    Justiciability

Before the Court can address the substance of LLS' claims, the Court must analyze certain justiciability issues. Costco argues LLS fails to establish the redressability prong of Article III standing and LLS' claims are prudentially moot. *See* Dkts. # 38, 43. As explained below, the Court is not convinced that LLS has established the redressability requirement of Article III standing. Furthermore, even if standing is established, the Court finds Plaintiff's claims are moot.

ORDER - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1.     Standing

There are "three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1195-96 (9th Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). With respect to the "injury in fact" requirement, the injury must be "concrete and particularized; ... actual and imminent, not conjectural or hypothetical." *Id*. at 1196 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). There must be a causal connection between the alleged injury and the conduct at-issue. *See Lujan*, 504 U.S. at 560. The redressability inquiry for standing "analyzes the connection between the alleged injury and requested judicial relief." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

### a.     *Injury*

LLS asserts three alleged injuries stemming from the Costco project. First, LLS asserts the project caused a loss of wildlife habitat that diminishes opportunities for LLS members to enjoy and benefit from fish populations. *See* Dkt. # 19 ¶ 10. Second, LLS claims its interest in the government performing credible analyses to minimize environmental impact was harmed by the Corps' analyses that led to the issuance of the Section 404 permit. *Id*. ¶ 11. Lastly, LLS asserts standing on the basis that they seek to ensure that applicable laws are followed. *Id*. ¶ 12.

LLS asserts that the Complaint and Declaration from a single LLS member, Doug Turner, demonstrates its basis for standing. *See* Dkt. # 35 at 9; Dkt. # 36. The Declaration makes generalizations about the alleged injury, claiming that the filling of the wetlands has harmed the salmon population and other wildlife in Mosher Creek, thus

ORDER - 5

harming members of LLS.  *See* Dkt. # 36 ¶ 5.  The Declaration includes a photo of a dead salmon and supporting text to insinuate that this was caused by the wetland fill.  *See Id.*

Plaintiff does not provide any facts or evidence that the filling of the wetlands and building of the Costco is connected to any harm of the animals beyond these claims made by concerned citizens.  "[A]t the summary judgment stage, a factual showing of perceptible harm," is required to establish standing.  *Lujan*, 504 U.S. at 566.  Generalized grievances, without factual support, untethered to a concrete action and concrete injuries, like the allegations LLS makes here, are insufficient to withstand Article III scrutiny.  However, even if they withstood Article III scrutiny, as explained below, the Court could not likely grant meaningful relief to redress the alleged harm.

### b.   ***Redressability***

To demonstrate redressability, a plaintiff must show that the injury "is likely to be redressed by a favorable decision*." Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 38, 41 (1976).  The redressability inquiry for standing "analyzes the connection between the alleged injury and requested judicial relief."  *Bellon*, 732 F.3d at 1146.

Here, the second and third injuries set forth by LLS seek vindication of the rule of law which do meet Article III's standing requirements.  Although a judgment in LLS' favor may provide some satisfaction to its members, requiring the Corps to adhere to the law in the future, when issuing other permits generally where LLS is not involved, "is not an acceptable Article III remedy because it does not redress a cognizable Article III injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *see also Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020) (holding claims did not meet the requirement for redressability because a declaration that the government is violating the law is relief that "is not substantially likely to mitigate the plaintiffs' asserted concrete injuries" and "is unlikely by itself to remediate their alleged injuries absent further court

1    action").  Therefore, the Court finds LLS' second and third claimed injuries do not meet

2    the redressability requirements for Article III standing.

3        The Court is also not convinced that the Plaintiff's first alleged injury, that

4    members lost the enjoyment of wildlife, meets redressability standing requirements.  LLS

5    does not claim Costco's extensive mitigation efforts were insufficient, and at most

6    propose that the Court could "require mitigation that would account for future adverse

7    effects" of the wetland fill.  Dkt. # 41 at 8.  The Court cannot grant relief to address

8    speculative future harm.  *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220,

9    1232 (N.D. Cal. 2022) (finding plaintiffs could not establish redressability where they

10   failed to demonstrate a strong risk of harm or provide particularized facts about a future

11   harm and stating "it would be inappropriate for this Court to not only speculate about

12   future harm, but whether a future decision would redress hypothetical harm").  As LLS

13   did not put forth any particular facts about future harm, it has failed to establish the

14   redressability prong required for Article III standing.

15       **2.    Mootness**

16       Defendant Costco maintains, and the Court agrees, Plaintiff's claims concerning

17   the now-complete wetland filling and construction of the Costco are moot.  Even if LLS

18   initially had standing to pursue their claims, those claims are now moot.

19       "The ripeness inquiry asks 'whether there is yet any need for the court to act,'

20   while the mootness inquiry asks 'whether there is anything left for the court to do.'"  *W.*

21   *Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990) (quoting 13A

22   Wright, Miller & Cooper, Federal Practice and Procedure, § 3532.1 (2d ed. 1984)).  "The

23   basic question in determining mootness is whether there is a present controversy as to

24   which effective relief can be granted."  *Nw. Env'tl Def. Ctr. v. Gordon*, 849 F.2d 1241,

25   1244 (9th Cir. 1988) (citing *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693,

26

ORDER - 7

698 (9th Cir. 1984)).  "A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract propositions of law.'"  *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (stating that unless the plaintiff can obtain effective relief, any opinion as to the legality of the challenged action would be advisory, in violation of Article III of the United States Constitution).  A federal court has no authority to issue opinions upon moot questions.  *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

It is not enough to survive a mootness challenge for there to have been an actual dispute at the time the complaint was filed; there must remain a "live" controversy throughout all stages of the court's review.  *See Burke v. Barnes*, 479 U.S. 361, 363 (1987); *Preiser v. Hewkirk*, 422 U.S. 395, 401 (1975).  Essentially, any change in the facts that ends the controversy renders the case moot.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  Even if a case is not constitutionally moot, a court may in its discretion dismiss a claim as prudentially moot "if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief [.]"  *Deutsche Bank Nat. Tr. Co. v. FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014).

Plaintiff urges the Court to reject Costco's prudential mootness argument.  *See* Dkt. # 41 at 3-10.  LLS contends that cases relied upon by Costco, *Deutsche Nat. Tr. Co.*, 744 F.3d 1124 (9th Cir. 2014) and *Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir. 2007), are "completely inapposite" because the cases "do not involve either NEPA or the CWA."  *See id*. at 9 n.20.  The Court disagrees.  In fact, a court in this district has recognized and applied the prudential mootness doctrine in cases involving NEPA and the CWA.  *See Idaho Rivers United v. U.S. Army Corps of Eng'rs*, No. 14-cv-1800, 2016

ORDER - 8

WL 498911, at *9 (W.D. Wash. Feb. 9, 2016).  There, the court found the claim prudentially moot because the plaintiff failed to demonstrate an on-going injury as a result of the completed project that could be mitigated.  *See id*.  Therefore, the Court concludes it is appropriate to consider and apply the doctrine in this case.

LLS insists its claims are not moot.  As discussed previously, Plaintiff requests the Court grant the following relief: 1) enter Declaratory Judgment that Defendants violated NEPA, CWA, and APA; 2) vacate the wetland fill permit issued; and 3) provide injunctive relief to ensure that Federal Defendants comply with the CWA and NEPA when issuing similar permits.  Dkt # 19 at 15-16.  Plaintiff also claims, "the Corps' decision should be vacated and remanded for the preparation of a full EIS, or at least an EA that complies with the law."  Dkt. # 35 at 34.  For the reasons stated in Section III.1.b. *supra*, the Court cannot redress alleged harms that involve the vindication of the rule of law, and thus need not address the mootness of the injuries and relief sought for those points.

Plaintiff now also claims relief "could include vacating the challenged Permit, and it could even include ordering the removal of the Costco Warehouse and restoration of the filled wetlands."  Dkt. # 41 at 6.  LLS is correct that completion of a project does not necessarily moot an environmental claim.  *See West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000); *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000); *Neighbors of Cuddy Mountain. v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002).  A case is moot "only where there is no effective relief for the alleged violation[.]"  *See Nat'l Fam. Farm Coal. v. EPA*, 747 F. App'x 646, 647 (9th Cir. 2019) (quoting *Neighbors of Cuddy Mountain*, 303 F.3d at 1065).

As discussed in Section III.1.a. *supra*, Plaintiff has failed to demonstrate any on-going injury to salmon or other wildlife caused by the wetland fill in 2021 that the Corps

ORDER - 9

could mitigate.   Therefore, the Court would be unable to order relief to mitigate a harm that has not been substantiated.  *See Idaho Rivers United*, 2016 WL 498911, at *9.  Even if the Court ordered the razing of the warehouse, LLS' generalized claim about the causal nature of the injury in the Declaration does not sufficiently demonstrate that the claimed injury could be redressed by taking a drastic action of ordering the removal the warehouse and restoration of the filled wetlands to their prior condition.  Accordingly, the Court finds that Plaintiff's claims concerning the completed wetland fill are now moot.

**B.      Substantive Challenges**

Even if Plaintiff's claims established proper standing and were not moot, the Court would still grant summary judgment in favor of the Corps and Costco on substantive grounds.  The administrative record demonstrates the Corps did not act in an arbitrary or capricious manner, abuse its discretion, or otherwise act contrary to the law when issuing the Section 404 permit to Costco in April 2021.

**1.      Standard of Review**

The Administrative Procedures Act (APA) permits judicial review of a "final agency action for which there is no other adequate remedy in court."  5. U.S.C. § 704. The Court may only set aside the underlying agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*. § 706(2)(A).  Thus, the Court does not, as it would in ruling on an ordinary summary judgment motion, determine whether there is any genuine dispute of material fact.  *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  Instead, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action passes muster under the APA*.  Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Occidental Eng'g*, 753 F.2d at 769-70.  Accordingly, the Court reviews the evidence included in the

ORDER - 10

administrative record to determine whether, as a matter of law, the evidence permitted the agency to make the decision it did. *Id*. Although the Court's review of the evidence is to be "searching and careful," it is "not empowered to substitute [its] judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

### 2.    NEPA

NEPA imposes procedural requirements designed to force agencies to take a "hard look" at the environmental consequences of their proposed actions. *350 Montana v. Haaland*, 50 F.4th 1254, 1265 (9th Cir. 2022). To satisfy the "hard look" requirement, an agency must provide "a reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Id*. To determine whether an agency has complied with NEPA's requirements, courts apply a rule of reason standard in reviewing the adequacy of a NEPA document. *See Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 992 (9th Cir. 2004).

The NEPA review process concludes in one of two ways: (1) the agency determines through an Environmental Assessment that a proposed action will not have a significant impact on the environment and issues a Finding of No Significant Impact, or (2) the agency determines that the action will have a significant impact and issues an Environmental Impact Statement and record of decision. *Env'tl Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2022).

LLS contends that in the Corps violated NEPA in various ways when issuing the Section 404 permit, including failing to account for the cumulative effects of the project and performing an inadequate alternatives analysis. *See* Dkt. # 35. LLS asserts that the Corps should not have issued the EA/FONSI, and the Corps should have completed an entire EIS. *See id*. As explained below, the Court is persuaded that the Corps prepared

a sufficiently detailed EA and did not act arbitrarily and capriciously.  Thus, the Corps were not required to publish an EIS.

a.   ***Environmental Impacts and Cumulative Effects***

LLS argues the Corps violated NEPA and the CWA because it failed to fully consider cumulative impacts of 119 acres of prior wetland fill in Snohomish County.  *See* Dkt. # 35 at 11-15.  Plaintiff's arguments are unavailing.  LLS has not shown that the Corps' final decision on environmental impacts was unreasonable.  *See Ctr. for Cmty. Action & Env't Just. v. FAA,* 61 F.4th 633, 639-640 (9th Cir. 2023).

As a threshold matter, the parties dispute which regulations the Corps were required to follow when analyzing cumulative effects and issuing thee EA/FONSI.  NEPA requires an agency conducting an EA to briefly discuss "the environmental impacts of the proposed action."  40 C.F.R. § 1501.5(c)(2).  These regulations were updated throughout the course of the application, and the Corps were permitted to apply either set of regulations.  *Compare* 43 Fed. Reg. 55, 978 (Nov. 29, 1978) (pre-2020 regulations) *with* 40 C.F.R. 1506.13 (2020) (2020 regulations); *see also* AR3455.[1]  LLS asserts that because the Corps cite to pre-2020 regulations in the EA, they were bound to follow these regulations and conduct a cumulative impacts analysis.  *See* Dkt. # 35 at 10 n.9.  The Corps contend that they applied the 2020 regulations, despite citing the pre-2020 regulations in the EA.  *See* Dkt. # 37 at 7; *see also* AR0023.

The Ninth Circuit looks to the regulations in place at the time of the challenged decision.  *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 879 (9th Cir. 2022) ("The NEPA regulations in effect at the time the agencies issued the EA set forth criteria for the agencies to consider when determining whether an action . . . requires a

---

[1] The pre-2020 regulations defined "impacts" and "effects" to include "cumulative effects," *see* 40 C.F.R. §§ 1508.7-1508.8 (Sept. 13, 2020), however the definitions were updated and eliminated "cumulative impacts" from the regulations' definition of "impacts" or "effects." *See* 40 C.F.R. § 1508.1(g) (Sept. 14, 2020) (updated definition of "effects" or "impacts").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

full EIS."). Accordingly, this Court reviews the challenged environmental impacts analysis under the 2020 regulations, which did not require an agency to examine cumulative effects, as those rules were in effect at the time the permit's issuance in 2021.

Under the 2020 regulations, the Corps properly considered and explained the environmental impacts in the EA/FONSI. The Corps analyzed relevant impacts as a part of its public interest review, which included analyzing the wetlands, fish and wildlife vales, water quality, and climate change effects that could impact the environment. AR00018-22. Additionally, the Corps considered potential cumulative impacts in light of mitigation efforts and concluded that the mitigation would compensate for any effects of the fill in the geographic area of Lake Stevens. *See* AR0023-25; *see also* AR0017; AR0830.

Even under the pre-2020 regulations, the Corps' decision to issue the permit would prevail. Plaintiff's main contention with the Corps' cumulative impact analysis appears to be that the Corps used the incorrect geographic scope when addressing cumulative impacts and should have considered information that is outside the scope of the administrative record. *See* Dkt. # 35 at 11-12. Plaintiff argues that the Corps should have used the geographic scope of Snohomish County, rather than Lake Stevens, which could have altered the cumulative impacts analysis. *See id*.

The Court finds that, in accordance with 33 U.S.C. § 1344(e)(1), the Corps properly considered the cumulative impacts associated with the project. *See* AR0023-25. It was well within the Corps' discretion to use Lake Stevens as the geographic boundary for the purposes of cumulative impacts analysis. *N. Plains Res. Council, Inc. v. Surface Transp. Bd*., 668 F.3d 1067, 1087 (9th Cir. 2011) ("The determination of the geographic boundary where environmental impacts may occur is often a task assigned to the special competency of the appropriate agencies." (internal quotation omitted)).

ORDER - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiff also argues the Corps' cumulative impacts analysis was conclusory, thus in violation of federal law.  Dkt. # 35 at 13.  The Corps' consideration of the mitigative action to compensate for the project as well additional mitigation that would enhance fish habitats in the area support the Corps' conclusion that overall impacts are not significant. The evidence in the record supports that Costco's mitigation efforts went above and beyond what was required by the government, ultimately improving the land for wildlife, including creating fish passable culverts for Mosher Creek.  *See e.g.*, AR0025 (requiring Costco to create fish passable culverts); AR1653 (requiring Costco to remove failing septic system that degraded water quality of certain wetlands to improve wetland function); AR2273 (National Marine Fisheries Service concluded "[i]n the long term, the project includes conservation measures that will improve [essential fish habitat] for coho salmon").  Although the EA succinctly discusses cumulative impacts, the EA and the record reflect an adequate process that demonstrate the Corps took the requisite hard look at the cumulative impacts.  *See Bering Strait Citizens for Responsible Res. Dev. V. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 954-55 (9th Cir. 2008) (finding a succinct discussion of cumulative impacts was adequate under NEPA's pre-2020 regulations where the Corps concluded the mitigation measures would improve the natural conditions); *see also Ctr. for Cmty. Action & Env't Just.*, 61 F.4th at 647 (9th Cir. 2023) (finding cumulative impact analysis where the complaining party criticized the EA's results rather than procedures).

The Court concludes that the Corps acted within the discretion afforded by NEPA, under the pre-2020 regulations and 2020 regulations, and properly considered environmental and cumulative impacts that the wetland fill would have in Lake Stevens when issuing the Section 404 permit.

ORDER - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

b.      *Alternatives Analysis*

LLS argues that the Corps did not comply with NEPA because the Corps failed to properly eliminate alternatives for the proposed building sites.   The Court is not persuaded that the Corps acted arbitrarily in reaching the conclusions for the alternatives analysis in the EA.

NEPA requires federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources[.]"  42 U.S.C. § 4332(2)(e). Although this obligation applies to both the preparation of an EA and EIS, *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1229 (9th Cir. 1988), "an agency's obligation to consider alternatives under an EA is a lesser one than under an EIS." *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 915 (9th Cir. 2012) (internal quotations omitted). "[W]hereas with an EIS, an agency is required to '[r]igorously explore and objectively evaluate all reasonable alternatives,' *see* 40 C.F.R. § 1502.14(a), with an EA, an agency only is required to include a brief discussion of reasonable alternatives."  *Id*. at 915 (quoting *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008)) (brackets in original); *cf*. 40 C.F.R. § 1508.9(b).  When evaluating a reasonable range of alternatives, an EA "need not consider an infinite range of alternatives, only reasonable or feasible ones." *Westlands Water Dist*. v. *U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (internal quotations omitted).

LLS challenges the Corps' decision to eliminate Alternative Site # 3 from the proposed building sites for the Costco warehouse.  Dkt. # 35 at 22-23.  Plaintiff criticizes the Corps for not independently verifying information when reaching the conclusion that Alternative Site # 3 would not be large enough for the Costco warehouse. *See id*.; *see also* AR2295-98.  LLS claims it was improper for the Corps to rely on information from

ORDER - 15

Costco's consultant's report that used information from a proposed Lowe's development in 2017 that required 30-foot landscape setbacks, leading to the conclusion that the site would be "too small to accommodate the Costco's proposed development." AR2297.

The Corps' reliance on the Costco's consultant's data about Alternative Site # 3 is reasonable and is entitled to deference from this Court. Federal Defendants demonstrated that the Corps engaged in a thorough query of the data and evidence presented by Costco. *See* Dkt. # 37. Additionally, the Corps engaged with public comments and requested information because of public comment about the alternatives analysis. *See, e.g.*, AR2403. Agencies are entitled to deference to determine "what constitutes the best available scientific information." *Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1258 (D. Idaho 2019). Further, the Corps are not required to independently evaluate information relied upon when preparing an EA. *See Clatsop Residents Against Walmart v. U.S. Army Corps of Eng'rs*, 735 F. App'x 909, 911 (9th Cir. 2018) ("No regulation imposes a standalone requirement that the Corps independently evaluate an applicant's submissions when preparing an EA."). Accordingly, the Corps permissibly relied upon the consultant's data and were not obligated to independently evaluate this information when ruling out Alternative Site # 3. Therefore, the Court concludes the Corps did not violate NEPA when considering the reasonable range of alternatives in issuing the EA/FONSI.

### 3.    CWA

LLS raises similar arguments about the Corps' alternatives analysis and cumulative impacts analysis under the CWA, although LLS treats these arguments under both statutes identically in its reply brief. *See* Dkts. # 35, 41.

The Clean Water Act prohibits the discharge of dredged or fill material into navigable waters of the United States without a permit. Section 404(e)(1) of the CWA

authorizes the Corps to issue general permits on a state, regional, or nationwide basis for categories of activities involving discharges of dredged or fill material that the Corps determines "are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." 33 U.S.C. § 1344(e)(1).  The issuance of such permits is governed by the commonly referred to "Section 404(b) Guidelines," which the Environmental Protection Agency and the Corps developed to implement Section 404(b)(1) of the CWA, 33 U.S.C. § 1344(b)(1).  Under those guidelines, the Corps must generally avoid adverse water quality impacts where practicable alternatives exist, mitigate those impacts, and then minimize the adverse effects of the proposed discharge to the maximum extent practicable. *See* 33 U.S.C. § 1344(b)(1); 33 C.F.R. § 320.4(r); 40 C.F.R. § 230.10(d) and pt. 230, subpart H.

### a.   *Cumulative Impacts*

Although NEPA did not require a cumulative impacts analysis at the time of the permit's issuance, typically the standard is similar under the prior NEPA regulations and the CWA. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1191 (10th Cir. 2002) (upholding a Corps permit under the CWA where the Corps satisfied NEPA's broader cumulative impacts requirements).  As discussed in Section III.B.2.a. *supra*, even considering the pre-2020 NEPA regulations, the Court has concluded the Corps adequately considered cumulative impacts in light of mitigation efforts. As the cumulative impacts analysis is broader under NEPA than the CWA, the Court concludes the Corps did not violate the CWA in conducting its cumulative impacts analysis.

### b.   *Alternatives Analysis*

Plaintiff contends that under the CWA the Corps should have considered the Plaintiff's proposed alternative which would have had less adverse impact on the aquatic

ORDER - 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

system.  Guidelines state in relevant part: "[N]o discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences."  40 C.F.R. §230.10(a).  The CWA guidelines provide that: "For actions subject to NEPA, where the Corps of Engineers is the permitting agency, the analysis of alternatives required for NEPA . . . will in most cases provide the information for the evaluation of alternatives under [the CWA] Guidelines."  40 C.F.R. § 230.10(a).

Plaintiff asserts the Corps were required to consider its proposal because it provided a plan that was less damaging to the environment.  Dkt. # 35 at 19.  LLS' proposal omitted plans to build a connecting road which would preserve a wetland on the property.  *See* AR2315.  This proposal was at odds with the City Site Plan that was approved by the City of Lake Stevens, over Plaintiff's objection on this point, before Costco applied to the Corps for the Section 404 permit.  *See* AR2465-66 (City of Lake Stevens denial of Plaintiff's challenge because the City Site Plan required Costco to build the connector road).  The Corps are only required to consider feasible alternatives in detail.  *See, e.g.*, 33 C.F.R. Part 325, App'x B.  Costco's permit application included a connector road as part of the City Site Plan; therefore, the Corps reasonably considered nine alternatives that included the road.  *See e.g.*, *Bering Strait Citizens for Responsible Res. Dev.*, 524 F.3d 938, 948 (9th Cir. 2008) (finding the Corps did not violate the CWA where it considered 24 design alternatives and noting it would be inappropriate for the court to overturn the Corps' findings even if an argument can be made that one of the unconsidered sites was suitable).

ORDER - 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In sum, the Court concludes that the Corps did not violate the CWA.  The Corps took a hard look at alternatives and were not required to independently evaluate information relied upon in its analysis.

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment.  Dkt. # 35.  The Court **GRANTS** Defendants' Cross-Motions for Summary Judgment.  Dkts. # 37, 38.

Dated this 21st day of June, 2024.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER - 19